IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| ROBERT A. DIXON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:12-3584 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the Plaintiff's Motion for Remand (Document No. 19.) and Defendant's Motion for Judgment on the Pleadings. (Document No. 20.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 3 and 4.)

The Plaintiff, Robert A. Dixon (hereinafter referred to as "Claimant"), filed an application for DIB on April 24, 2009 (protective filing date), alleging disability as of November 15, 2008, due to "back problems and anxiety problems. I also have arthritis problems, high blood pressure, and high cholesterol." (Tr. at 12, 135-36, 137-40, 155, 159.) The claim was denied initially and upon reconsideration. (Tr. at 12, 52-53, 54-56, 63-65.) On January 5, 2010, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 66-67.) The hearing was held on June 14, 2011, before the Honorable Geraldine H. Page. (Tr. at 28-51.) By decision dated July 20, 2011, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-22.) The ALJ's decision became the final decision of the Commissioner on May 30, 2012, when the Appeals Council denied

Claimant's request for review. (Tr. at 1-6.) On July 23, 2012, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2011). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f) (2011). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity from his alleged onset date of November 15, 2008, through his date last insured of December 31, 2009. (Tr. at 14, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "obesity, carpal tunnel syndrome, lumbar spine degenerative and arthritic changes, disc bulging and protrusion, and degenerative disc disease, anxiety, and panic disorder with agoraphobia," which severe impairments. (Tr. at 14, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairment did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity to perform light exertional work, as follows:

> [T]he [C]laimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can frequently handle, feel, finger, and reach with the upper left extremity. He should engage in no more than concentrated exposure to climbing ladders, ropes, or scaffold, and hazards such as moving machinery, unprotected heights, and vibrating surfaces. He should engage in only occasional interaction with the general public, and superficial contact with coworkers and supervisors.

(Tr. at 16, Finding No. 5.) At step four, the ALJ found that Claimant was unable to return to his past relevant work. (Tr. at 21, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ also concluded that Claimant could perform jobs such as an assembler, a packer, and an inspector/tester/sorter, at the unskilled, light level of exertion. (Tr. at 21, Finding No. 10.) On this basis, benefits were denied. (Tr. at 22, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on December 16, 1957, and was 53 years old at the time of the administrative hearing, June 14, 2011. (Tr. at 21, 32, 137.) Claimant had a ninth grade, or limited education and was able to communicate in English. (Tr. at 21, 32, 158, 163.). In the past, Claimant worked in satellite television business, repairs, installation, and supervision. (Tr. at 21, 47, 160, 166-68.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence

because the ALJ erred in relying on the testimony of the VE which was inconsistent with information contained in the Dictionary of Occupational Titles ("DOT"). (Document No. 19 at 3-8.) Claimant addresses each of the three jobs identified by the VE separately. (Id.) However, he first asserts that the ALJ erred in finding that his left, non-dominant hand can be used frequently, but failed to address the frequency of his right hand. (Id. at 3.) Claimant asserts that the non-dominant hand is not as manipulative. (Id.)

Claimant also alleges that the requirements of the jobs of assembler, bagger/packer, and sorter are inconsistent with the ALJ's assessed RFC. (Document No. 19 at 4-8.) He contends that he is unable to perform the assembler job because it requires him to use his hands in a "tedious manner on a continual basis for the duration of a work day," which is precluded by his CTS. (Id. at 5-6.) He further asserts that he is unable to perform the assembler job because his limited neck, lumbar, and extremity motion preclude him from looking downward at his hands and hand tools and leaning forward for the duration of the work day. (Id. at 5.) Claimant next alleges that he is unable to perform any of the jobs because his panic disorder with agoraphobia and anxiety preclude him from undergoing one month of training as required for the assembler and sorter jobs and preclude more than minimal interaction with coworkers and the public as required for the bagger/packer job. (Id. at 5-8.)

Claimant alleges that he is unable to perform the job of packer/bagger because it requires constant use of both arms, both hands, bending, and reaching. (Id. at 7.) Finally, Claimant alleges that he is unable to perform the job of sorter because it would create "constant stress and strain to maintain a production rate pace and can therefore be physically demanding of a worker." (Id. at 8.)

In response, the Commissioner asserts that the assembler job requires the use of hands only on a frequent basis and that the ALJ did not find that Claimant had any limitations in looking down

5

or leaning forward because the medical evidence failed to support such a finding. (Id.) Respecting Claimant's mental impairments, the Commissioner asserts that the ALJ specifically limited Claimant only to occasional interaction with the general public and only superficial contact with coworkers and supervisors. (Id. at 11.) The ALJ's RFC assessment is supported by Ms. Fontenot's opinion and Dr. Bickham's opinion. (Id.) Furthermore, any training that Claimant may require is speculative. (Id.) Regarding the packer/bagger job, the Commissioner asserts that there is no evidence that the job would require interaction with people that Claimant does not know or more than minimal interaction with coworkers. (Id. at 12.)

The Commissioner asserts that contrary to Claimant's allegation, the job of packer/bagger requires frequent rather than constant use of the arms for reaching, handling, and fingering, and there is no evidence that the job requires bending or repetitive tasks. (Id. at 11-12.) Regarding the sorter job, the Commissioner asserts that there is no support for Claimant to conclude that the job would create constant stress or strain, or require a production rate that exceeds his abilities. (Id. at 12.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

***Physical Impairments***:

On February 20, 2008, Dr. John O. Collins, M.D., Neurology Clinic, Inc., ordered an EMG and nerve conduction study of Claimant's upper extremities upon complaints of burning, numbness, tingling, and pain in both hands that came on all at once after cutting a Walnut tree. (Tr. at 252.) The study was mildly abnormal with findings suggestive of left greater than right median distal neuropathy. (Id.) Dr. Collins noted that the findings were subtle with clinical history suggesting the possibility of CTS, although Claimant did not have problems with stiffness or popping in his hands

with movement. (Id.) He recommended a trial use of wrist splints, a trial of Celebrex, and possible x-rays to evaluate for hand arthropathy. (Id.)

On May 22, 2009, Dr. Albert H. Gelderman, M.D., completed a Routine Abstract Form - Physical, on which he indicated that Claimant had severe osteoarthritis with sciatica, herniated disc at L4-L5, chronic shoulder pain, well-controlled hypertension, and chronic anxiety. (Tr. at 315.) Dr. Gelderman noted that on exam, Claimant presented with normal gait and station and fine and gross motor skills. (Tr. at 316.) He had limited range of motion in his neck, lumbar spine, and upper and lower extremities. (Id.) Neurological findings were within normal limits, except for sensory deficits in the lower extremities. (Tr. at 317.) Dr. Gelderman referred Claimant for an MRI of his lumbosacral spine on October 16, 2009, which revealed moderate degenerative changes at L3-L4 and L4-L5 with bulging annulus with arthritic changes causing mild bilateral foraminal narrowing; tiny central disc protrusion at L5-S1 without impingement; and significant diffuse thickening of the wall of the urinary bladder. (Tr. at 300.)

Dr. Shamma Othman, M.D., conducted a consultative evaluation of Claimant on August 27, 2009, for complaints of back pain. (Tr. at 286-90.) Claimant reported back pain with occasional lower extremity radiation and a tear in his left shoulder. (Tr. at 286.) He also reported arthritis pains in both hands. (Tr. at 287.) Physical exam revealed full motor strength in all extremities, limited left flexion of the shoulder, full grip strength, normal fine manipulation, some limitation of lumbar flexion and extension, positive straight leg raise testing bilaterally at 60 degrees, and an ability to stand on his toes and heels, and squat with some difficulty. (Tr. at 287-88.) Claimant ambulated with a cane and used it to help him get on and off the exam table, but usually did not use it when he walked. (Tr. at 288.) His gait was unremarkable. (Id.)

On November 16, 2009, Dr. Jeffrey A. Greenberg, M.D., conducted a neurological

evaluation of Claimant for complaints of chronic back pain. (Tr. at 305-07.) Claimant reported low back pain, lateralized more to the left that rarely radiated down his legs. (Tr. at 305.) He currently was taking Hydrocodone for pain, Klonopin to help him sleep, and Prozac for depression. (Id.) Claimant reported that the pain was worse upon bending and lifting. (Id.) Physical examination revealed negative straight leg raise testing, normal motor strength bilaterally in the upper and lower extremities, intact sensation, diminished ankle reflexes, downward-going toes, a normal gait and tandem walk, difficulty toe and heel walking, decreased lumbar spine range of motion, and tenderness at L4-L5 and L5-S1. (Tr. at 306.) Dr. Greenberg recommended facet injections and Claimant agreed. (Tr. at 306-07.)

Claimant treated with Dr. Marc Swanson, M.D., at the Blue Ridge Pain Management Associates, P.C., and on January 20, 2011, Dr. Swanson noted on examination that Claimant had poor neck and lumbosacral spine range of motion, but modest left shoulder arthropathy, and modest elbow, wrist, and hand arthropathy. (Tr. at 454.) On May 17, 2011, Dr. Swanson noted bilaterally impaired shoulder abduction, extension, and scapular excursion; a bit deficient grip strength; and arthropathic hands. (Tr. at 518.)

Dr. Amy Wirts, M.D., a state agency physician, completed a form Physical RFC Assessment on September 11, 2009, on which she opined that Claimant was capable of performing medium work with frequent postural limitations except that he could occasionally crawl and climb ladders, ropes, and scaffolds. (Tr. at 291-98.) Dr. Wirts further opined that Claimant was limited in his ability to reach, handle, finger, and feel due to mild limitations in his left shoulder and due to CTS, left greater than right. (Tr. at 294.) Finally, she opined that Claimant should avoid even concentrated exposure to extreme cold, vibration, and hazards. (Tr. at 295.)

8

*Mental Impairments*:

On June 29, 2009, Tina Fontenot, M.S., a licensed psychologist, conducted a consultative psychological evaluation. (Tr. at 263-67.) Claimant reported anxiety on a daily basis, panic attacks, sleep disturbance, appetite fluctuations, low energy and fatigue, and fleeting suicidal thoughts. (Tr. at 264.) He denied any mental health treatment. (Tr. at 265.) On mental status exam, Ms. Fontenot observed that he was motivated and oriented, spoke clearly and concisely, had a euthymic mood and blunted affect, had fair insight and mildly deficient concentration, and had a normal exam in all other respects. (Id.) She noted his daily activities to have included feeding chickens and collecting the eggs, caring for his dogs, watching television, riding the tractor, taking short walks, helping out a little around the house, and performing his own personal care. (Tr. at 266.) Ms. Fontenot diagnosed anxiety disorder NOS and panic disorder without agoraphobia. (Id.) She noted that Claimant was uncomfortable going into crowded places, did not like to speak to strangers, and preferred to stay to himself. (Id.) She opined that Claimant's prognosis was poor but that he was capable of managing his finances. (Id.)

On November 12, 2009, Dr. Douglas R. Eitel, M.D., conducted a psychiatric evaluation. (Tr. at 312-13.) Claimant reported a history of high anxiety, a tendency to withdraw from his family, an avoidance of social gatherings other than family, poor sleep, and irritability. (Tr. at 312.) He admitted that he drank a twelve pack of beer daily, together with liquor, and currently drinks four to six beers a day. (Id.) On mental status exam, Dr. Eitel observed that Claimant ambulated with a cane and had a restricted affect and an anxious mood. (Tr. at 312-13.) The exam essentially was normal in all other respects. (Id.) He assessed panic disorder with agoraphobia, prescribed Symbyax 3/25 nightly, and recommended continued counseling and alcohol reduction. (Tr. at 313.) Dr. Eitel

9

assessed a GAF of 60.[1] (Id.)

Paula J. Bickham, Ph.D., completed a form Mental RFC Assessment on July 18, 2009, on which she opined that Claimant was moderately limited in his ability to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. at 282-84.) She assessed that Claimant was not limited significantly in all other functional areas. (Id.) Dr. Bickham opined that Claimant retained "the ability to perform work-like activities with minimal contact with the general public and coworkers." (Tr. at 284.)

Analysis.

Claimant alleges that the VE's testimony is inconsistent with the DOT. (Document No. 19 at 4-8.) To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of a claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th

---

[1] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

Cir. 1983).

SSR 00-4p, which became effective December 4, 2000, and was in effect at the time of the administrative hearing in 2009, states that before an ALJ can rely on Vocational Expert testimony, he or she must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the vocational expert and information contained in the DOT and explain in the determination or decision how any conflict that has been identified was resolved. Social Security Ruling 00-4p, 2000 WL 1898704 (December 4, 2000).

*A. Upper Extremities*.

Claimant first alleges that the ALJ erred in finding that his left, non-dominant hand can be used frequently, but failing to address the frequency of use of his right hand. (Document No. 19 at 3.) In her RFC assessment, the ALJ found that Claimant could frequently handle, feel, finger, and reach with the left upper extremity. (Tr. at 16.) In making this finding, the ALJ noted Dr. Othman's range of motions limitations and left shoulder tear with some limitations. (Tr. at 18, 286-87.) The EMG/Nerve Conduction Study by Dr. Collins was suggestive of median distal neuropathy, left greater than right. (Tr. at 17, 252.) Accordingly, the medical record supported a limitation for Claimant's left upper extremity but not for his right. The Court finds that the ALJ properly assessed Claimant's upper extremity limitations and that Claimant's argument is without merit.

*B. Assembler Job*.

Claimant next alleges that he is unable to perform the job of assembler, DOT occupational number, 731.687-010, because it requires him to use his hands in a tedious manner on a continual basis. (Document No. 19 at 5-6.) Contrary to Claimant's allegation, the job of assembler requires the use of hands for reaching, handling, fingering, and feeling on a frequent basis. DOT 731.687-010, 1991 WL 679813. Claimant next alleges that he is unable to perform the job of assembler due

11

to his limited neck, lumber, and extremity motion, which precludes him from looking downward or leaning forward. (Document No. 19 at 5.) Contrary to Claimant's allegations, the ALJ did not assess any limitations in looking down or leaning forward, because such limitations were unsupported by the medical evidence. None of the physicians of record assessed any work-related functional limitation resulting from Claimant's spine. Dr. Othman found some lumbar spine limitation, but no cervical spine limitation. (Tr. at 18, 287-88.) Dr. Gelderman found limited range of neck, lumber spine, and upper extremity motion (Tr. at 17, 316.) and Dr. Swanson noted poor neck and lumbar spine range of motion. (Tr. at 19, 454.) Nevertheless, the ALJ considered such limitations, noted the absence of any work-related functional limitations, and reduced Claimant's RFC to light exertional level work. (Tr. at 16.) Thus, the ALJ compensated for the reduced ranges of motion. There is no indication that the reduced level of motion is beyond the level of light level work.

      Claimant also alleges that he is unable to perform the job of assembler because his panic disorder with agoraphobia and anxiety precludes him from undergoing training for up to one month. (Document No. 19 at 5-8.) Claimant also alleges that for this reason he is unable to perform the job of sorter. (Id. at 8.) As the Commissioner notes, the ALJ accounted for Claimant's panic disorder with agoraphobia in her RFC assessment when she limited Claimant only to occasional interaction with the general public and only superficial contact with coworkers or supervisors. (Tr. at 16.) Ms. Fontenot specifically opined that Claimant was uncomfortable in crowded places, did not like speaking to people he did not know, stayed to himself, and was unable to be in public due to his panic disorder. (Tr. at 18, 266.) Similarly, Dr. Bickham opined that Claimant was able to perform work-like activities with minimal contact with the general public and coworkers. (Tr. at 18, 284.) To the extent that Claimant alleges that the jobs will require a month of training that will require more than the interaction assessed by the ALJ is speculative. Accordingly, the Court finds that the

VE's testimony is consistent with the DOT, that Claimant is capable of performing the job of assembler as identified by the VE, and that Claimant's argument is without merit regarding the assembler position.

### B. *Packer/Bagger Job*.

Claimant also alleges that the VE is inconsistent with the DOT because he is unable to perform the job of packer/bagger, DOT occupational number 920.687-018, because it requires constant use of both arms, both hands, bending, and reaching. (Document No. 19 at 7.) Contrary to Claimant's allegations, the job of bagger requires only frequent use of the arms for reaching, handling, and fingering. DOT 920.687-018, 1991 WL 687965. Contrary to the Commissioner's statements, stooping, or bending is required only on an occasional basis and there is an indication that repetitive or short-cycle work is required. Id. Nevertheless, because the use of the hands and arms is only on a frequent basis rather than a continual basis and because the VE has identified two other jobs in significant numbers that Claimant can perform, the Court finds any error that may have been committed to be harmless.

### C. *Sorter Job*.

Finally, Claimant alleges that he is unable to perform the job of sorter, DOT occupational number 569.687-022, because it would create stress, strain, and a production rate pace that was too physically demanding of him. (Document No. 19 at 8.) Claimant provides no support for his argument and the Court finds no evidence to support his contention. The ALJ properly relied on the VE's testimony in response to proper hypothetical questions and substantial evidence supports the ALJ's reliance to find that Claimant is capable of performing job in significant numbers in the national and regional economies. Accordingly, the Court finds that Claimant is capable of performing the jobs identified by the VE and that Claimant's arguments are without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Remand (Document No. 19.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 20.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

. The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2014.

R. Clarke VanDervort
United States Magistrate Judge